# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| TODD M. CAWARD, | Civil Action No. 114-6042 (FLW) |
| Petitioner, | |
| v. | OPINION |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**WOLFSON, UNITED STATES DISRICT JUDGE:**

## I. INTRODUCTION

This § 2255 motion arises out of Petitioner Todd M. Caward's guilty plea and sentencing for violations of 18 U.S.C. § 871 and 18 U.S.C. § 876 arising from charges contained in two separate Indictments. Pursuant to Fed. R. Civ. P. 78, upon review of all submissions, this matter is decided without oral argument, and for the reasons stated below, the Court denies the Motion and denies a certificate of appealability.

## II. FACTUAL BACKGROUND & PROCEDURAL HISTORY[1]

On February 15, 2012, in the Middle District of Pennsylvania, a one-count Indictment was filed against Caward charging him with mailing a threatening letter to the President of the United States, in violation of 18 U.S.C. § 871. Specifically, the Indictment charged Caward with mailing President Obama a letter on or about October 15, 2011, in which Caward stated that he

---

[1] The Court recounts only the facts necessary to this Opinion.

was affiliated with the Aryan Brotherhood and was coming to take the President's life. On November 8, 2012, a Rule 20 consent to transfer case for plea and sentence to the District of New Jersey was filed. This Indictment was assigned to the undersigned for entry of the plea and indexed in the District of New Jersey under Crim. No. 12-0721 (the "M.D. Pa. Case").

On April 5, 2012, a four-count Indictment was filed in the Eastern District of Pennsylvania, indexed under Crim. No. 12-0152, and assigned to the undersigned in the District of New Jersey. Count One and Three of the Indictment charged Caward with offenses related to the following threat contained in a letter mailed on or about December 1, 2011 to a judge in the Eastern District of Pennsylvania:

> Its time for you to pay and I don't mean in a monetary sense. I mean with your life!! [Y]ou and your family are a bunch of Jew ass loving punks who kiss ass with the n...s (racial epithet)! Your (sic) trying to take over but that will never happen because you may be taken off the count before you read this, and if not then in only a few hours you'll be dead. [A]long with your family they will be tormented to a slowly (sic) death and thats (sic) the Aryan truth. Me and my people are to (sic) smart for your out of date security. So get ready I am coming to choke the life out of you and your punk ass family you Jew loving Punk!!

Counts Two and Four charged Caward with offenses related to the following threat contained in a letter mailed on or about December 7, 2011 to the same judge in the Eastern District of Pennsylvania:

> You Jew ass Loving Punks Just don't get the picture. I [a]m coming to kill your n...r (racial epithet)/Jew ass so get ready!! You can send whoever you want to try and talk me down[.] I [a]m not changing my mind[.] [Y]ou've made decisions That had directly effected white associates of mine And I [a]m the man for the Job[.] I [have] got a .308 bullet with your name on it!! So get ready asshole!! Your (sic) a deadman!!

Specifically, Counts One and Three charged Caward with mailing threatening communications to a federal judge, in violation of 18 U.S.C. § 876(c) and Counts Two and Four charged Caward with threatening a federal judge in violation of 18 U.S.C. § 115(a)(l)(B). This Indictment was

assigned to the undersigned because the judiciary in the Eastern District of Pennsylvania was recused from this matter. (the "E.D. Pa. Case").

On November 14, 2012, Caward entered guilty pleas in the M.D. Pa. Case and to Counts One and Three of the Indictment in the E.D. Pa. Case. A plea agreement, associated with the M.D. Pa. Case, was electronically filed in that District on June 26, 2012. (*See* ECF No. 7-1, Exhibit A.) A plea agreement associated with the E.D. Pa. Case was filed on November 14, 2012, when Caward entered his plea. (*See* ECF No. 7-2, Exhibit B.) Both plea agreements were reviewed in open Court on November 14, 2012 prior to Caward's guilty pleas. (*See* ECF No. 7-3, Exhibit C (Transcript of November 14, 2012 Plea Proceeding) at 8:7-18:10.) Mr. Caward advised the Court that he reviewed and fully understood the terms of both plea agreements. *Id.* at 14:10-17.)

Caward was represented by Assistant Federal Public Defender Brian Reilly, Esq. at the plea proceedings in regard to both charges. Prior to the transfer of the M.D. Pa. Case to the District of New Jersey, Caward was represented by Anne Gingrich Cornick, Esq. in the Middle District of Pennsylvania.

On July 8, 2013, Caward was sentenced to a term of imprisonment of 56 months in the M.D. Pa. Case and 56 months in the. E.D. Pa. Case to run concurrent to each other. (*See* ECF No. 7-4, Exhibit D (Judgment)). The Court also sentenced Caward to a three year term of supervised release in both cases. *Id.* Caward did not file an appeal. Caward was represented by Mr. Reilly at sentencing.

Caward's Section 2255 Petition was docketed on September 29, 2014, and is dated September 23, 2014. (ECF No. 1, Motion at 14.) Caward alleged four grounds for relief in his Section 2255 Petition. First, Caward alleges that Mr. Reilly was ineffective for failing to submit

to the Court a psychiatric evaluation purportedly prepared by Dr. Gerald Cooke, and that Caward "surely would have been given a lesser sentence" if this examination had been submitted. Second, Caward alleges that he suffers from severe mental illness and he is not receiving treatment. Third, Caward alleges that Mr. Reilly was ineffective because he allegedly said that "all things would not be mentioned," that Caward would be sent to a prison where he would receive mental health treatment, and that Caward would "get less time" because of the psychological evaluation. Finally, Caward claims that Mr. Reilly was ineffective because he "lied to" Caward by allegedly telling Caward he would be better off by pleading guilty and that he would submit Dr. Cooke's psychological evaluation.

On October 2, 2014, the Court entered an Order after screening the Section 2255 Petition for dismissal in accordance with Rule 4(b) of the Rules Governing Section 2255 Proceedings. (ECF No. 3.) The Court summarily dismissed Ground Two because this claim is not cognizable in a motion to vacate under Section 2255. (*Id.*) The Court ordered the Government to file an answer to Grounds One, Three, and Four. The Government filed its Answer on December 17, 2014. (ECF No. 7.) Caward did not file a reply, but instead submitted several letters, which the Court addresses below. (*See* ECF Nos. 6, 11.)

### III. STANDARD OF REVIEW

Title 28, United States Code, Section 2255 permits a court to vacate, correct, or set aside a sentence

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255.

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)). In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted). "It is the policy of the courts to give a liberal construction to *pro se* habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010). The Court may dismiss the motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11–4646, 2013 WL 4538293, at *9 (D.N.J. Aug. 26, 2013) (citing *Booth*, 432 F.3d at 545–46). Furthermore, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *Johnson v. United States*, 294 F. App'x 709, 710 (3d Cir. 2008) (*United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)).

## IV. ANALYSIS

### a. Timeliness of § 2255 Motion

As noted by the Government, Caward's § 2255 Motion appears time barred. A one-year statute of limitations applies to a federal prisoner's request for relief under 28 U.S.C. § 2255. The one-year period runs from the latest of four specified events:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or

laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could not have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Here, the one-year period began to run for Caward from the date on which his judgment of conviction became final. Caward was sentenced on July 8, 2013, and he did not appeal. "If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired." *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir.1999). In a criminal case, a defendant must file his notice of appeal within fourteen days of "the entry of either the judgment or the order being appealed." *See* Fed. R. App. P. 4(b)(l)(A)(i). Thus, Caward's conviction became final on July 22, 2013, and his time to move for relief under 28 U.S.C. § 2255 expired on July 22, 2014. *See Nelson v. United States*, 2013 WL 2182602, *2 (D.N.J. May 20, 2013); *Lugtu v. United States*, 2010 WL 1816789, *2 (D.N.J. May 3, 2010). Caward's Motion was not submitted to prison officials for filing until September 23, 2014 (ECF No. 1, Motion at 14), approximately two months after the limitations period expired. Accordingly, it appears that Caward's Section 2255 Motion is time-barred.[2]

---

[2] Petitioner appears to argue that he is entitled to equitable tolling due to his attorney's failure to assist him with the filing of his § 2255 Motion, his transfers between federal facilities, his mistaken belief that his Motion needed to be typed, and his status as a "disabled person under the Mental Health Act." (*See* ECF No. 1, Motion at 13.) As explained below, even assuming one or more of these reasons would entitled Petitioner to equitable tolling, the Court finds that his claims are without merit.

### b. Merits of Grounds One, Three, and Four

Even if Caward's Section 2255 Motion were timely or he were entitled to equitable tolling, dismissal would be required because Petitioner has not made a prima facie showing of prejudice. Following the dismissal of Ground Two, Caward's Section 2255 Petition is based solely on the claim that his counsel was ineffective, as alleged by Caward in Grounds One, Three and Four. A federal prisoner's claim for ineffective assistance of counsel is properly raised for the first time in federal district court as a § 2255 motion rather than on direct appeal. *See United States v. Garth*, 188 F.3d 99, 107 n. 11 (3d Cir. 1999); *United States v. Cocivera*, 104 F.3d 566, 570 (3d Cir. 1996). A defendant claiming ineffective assistance of counsel at sentencing must show both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). On the first prong, the defendant must demonstrate that trial "counsel's representation fell below an objective standard of reasonableness," which is an inquiry we undertake with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 688–89. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In order to sustain an ineffective assistance of counsel claim, movant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259–260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891–92 (3d Cir. 1987). Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] ... unadorned legal conclusion[s] ... without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). Finally,

"[b]ecause failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

Petitioner's Grounds for relief overlap substantially and center on Caward's attorney's failure to submit to the Court a psychiatric evaluation allegedly prepared by Dr. Cooke. Specifically, in Ground One of his Motion, Caward alleges that Mr. Reilly was ineffective for failing to submit a psychiatric evaluation purportedly prepared by Dr. Gerald Cooke, and that he "surely would have been given a lesser sentence" if this examination had been submitted to the Court. In Ground Three, Caward alleges that Mr. Reilly was ineffective because he allegedly said that "all things would not be mentioned," that Caward would be sent to a prison where he would receive mental health treatment, and that Caward would "get less time" because of the psychological evaluation. Finally, Caward claims that Mr. Reilly was ineffective because he "lied to" Caward by allegedly telling Caward he would be better off by pleading guilty and that he would submit Dr. Cooke's psychological evaluation. (ECF No. 1, Motion at 5, 8-9.)

The only record evidence of the evaluation by Dr. Cooke is contained in a single paragraph of the Presentence Report. Caward's Presentence Report states that "Caward advised that he was referred by defense counsel for psychological testing with Gerald Cooke, Ph.D. of Plymouth Meeting, Pennsylvania, although results or records were not available to the probation office." (PSR at ¶ 138.) Although the Presentence Report does not include information from Dr. Cooke's evaluation, it includes substantial information about Petitioner's mental health history, including the fact that Caward had been medicated with Celexa, Risperdal, and Remeron in the Pennsylvania State prison system for antisocial personality disorder and/or intermittent explosive

disorder. (PSR at ¶ 137.) The PSR also indicates that Caward advised that he was previously referred for a mental health evaluation after he entered foster care as a juvenile and was reportedly diagnosed with depression and placed on antidepressant medications. (*Id.* at ¶¶ 106, 140.)

At the plea hearing, Petitioner also informed the Court that he was taking Celexa and Risperidone for depression, and took these medications on a daily basis. (Exhibit C, Plea Transcript at 4:20-5:11.) Petitioner stated that these drugs did not impair his ability to understand, and his counsel stated that he had no concerns about Petitioner's competency. (*Id.* at 5:12-19.)

Petitioner's counsel also submitted a sentencing memorandum dated July 1, 2013.[3] In that memorandum, counsel argued that Caward's "significant mental health issues" coupled with the emotional strain of solitary confinement and the loss of custody of his daughter precipitated the criminal acts at issue. The sentencing memorandum heavily emphasized Caward's mental health issues:

> From the PSR, it can be gleaned that there were already significant mental health issues with which Mr. Caward struggled before these actions. There have been diagnoses including Bi-Polar Disorder and Intermittent Explosive Disorder. . . . Both disorders impact proper impulse control. Mr. Caward has been taking antipsychotic medication while [in state prison], including Haldol, Remeron, and Resperidol [sic].

(Sentencing Memorandum at 2.) Counsel also noted Caward's difficult "personal history", which included physical abuse by his stepfather, who held white supremacist views, his lack of education, and time spent in foster care. Based on Petitioner's mental health status, environmental stressors, and personal history, counsel argued for a sentence near the low end of

---

[3] The sentencing memorandum is not attached as an exhibit.

the Guidelines range. (*Id.* at 1-3.) Notably, Counsel also attached to the sentencing memorandum a "Psychological Assessment Report" that was completed in 2008 during Petitioner's incarceration. (*Id.*)

At sentencing, Petitioner's counsel reiterated the arguments in the sentencing memorandum and highlighted Petitioner's mental health status as a contributing factor that led to the commission of the crimes at issue:

> Judge, if you look at the factors that surrounded the time period within which this offense occurred, we have a situation where Mr. Caward was in solitary confinement, locked in a room 23 hours a day, with no resources, counseling, communication, really, and lights kept on all through the night. So was some type of sensory deprivation there.
>
> He's previously been diagnosed with mental health disorders such as intermittent explosive disorder and/or bipolar for which he had been medicated in the past. He also recently received notice that his daughter was going to be adopted by another individual.
>
> All of these things combined to create a ground swell of emotion that found itself in basically a lack of impulse control in these letters that are almost inexplicable. And you go back to his prior history, Judge, growing up in a house where he was abused with a father that implicated this which supremacist belief that just exploded onto paper and created the problem that he have here today.

(ECF No. 7-5, Ex. E (July 8, 2013 Sentencing Transcript) at 8:22-9:17.)

In considering the § 3553(a) factors, the Court acknowledged Petitioner's mental health issues, but emphasized that his mental health status did not fully explain or excuse his behavior:

> I note that Mr. Reilly, you have argued that [the letter] were sent at a time when [Petitioner] was under great stressors having spent some time in restricted housing, as well as having received information about his daughter being adopted by someone else, and that he does have clearly an overlay of certain emotional disturbances. But he was receiving medication for all of them while in prison and we know that none of that can serve as any kind of excuse for his behavior.

(*Id.* at 13:16-24.) The Court also acknowledged that Petitioner needed mental health treatment, stating as follows: "I do appreciate that [Caward] requires very intensive mental health treatment. There is no doubt in my mind about that. And certainly the medications do not seem to have totally worked to control that behavior, and I'll deal with that with some of the conditions that I will impose." (*Id.* at 14:22-15:2.) In imposing conditions of supervised release, the Court required that Petitioner be provided with mental health treatment. (*Id.* at 17:20-18:3.) The Court also "recommend[ed] that the Bureau of Prisons . . . consider a facility . . . that would accommodate the mental health concerns that this Court has." (*Id.* at 20:20-24; *see also* ECF No. 7-4, Judgment of Conviction at 2.))

Having reviewed the relevant record, the Court finds that Petitioner has failed to provide sufficient facts or evidence to support his conclusory allegation that he was prejudiced at sentencing by his attorney's failure to submit the psychiatric evaluation by Dr. Cooke to the Court. Caward has provided <u>no facts</u> about the results of that psychiatric evaluation; nor has he explained how the Court's knowledge of the contents of the evaluation, which presumably occurred several years after the criminal conduct at issue, would have resulted in a lower sentence. With respect to Caward's claims that his attorney was ineffective because he should have submitted the psychological evaluation purportedly prepared by Dr. Cooke and that he "lied" and said he submitted it when he really did not, the Court was already well aware of Caward's mental health issues and considered his mental health status in imposing his sentence.

Further, Mr. Reilly's sentencing submission and arguments at sentencing in support of mitigation were largely predicated on Caward's mental health status. Mr. Reilly, as part of his sentencing memorandum, submitted a Psychological Assessment Report for the Court's consideration and records concerning antipsychotic medications that Caward was previously

11

prescribed. Mr. Reilly also argued at sentencing that the court should consider Caward's mental health in imposing sentence, arguing that Caward's mental health issues coupled with the stress of solitary confinement and the fact that Caward's daughter was going to be adopted "combined to create a ground swell of emotion that found itself in basically a lack of impulse control in these letters that are almost inexplicable." (Exhibit E, Sentencing Transcript at 8:10-13.) The Court, having reviewed the PSR, the sentencing submission, and counsel's arguments clearly took Caward's mental health into account in imposing sentence. Thus, Caward is unable to meet the prejudice prong of *Strickland* because the Court was fully informed of Caward's mental health issues and took those issues into account in imposing sentence, and Caward has not provided any facts or evidence regarding the contents of Dr. Cooke's evaluation. For these reasons, the Court denies habeas relief on Grounds One, Three, and Four.

   c. **Petitioner's Subsequent Letters Regarding Ground Two (Summarily Dismissed by the Court)**

The Court previously dismissed Ground Two of the Petition in which Caward alleged that he suffers from severe mental illness and is not receiving treatment in federal prison. In screening the Motion for dismissal, the Court dismissed this ground as follows:

> In Ground Two, Caward claims that he suffers from severe mental illness and he is not receiving treatment at USP Hazelton. Ground Two implicates Caward's rights under the Eighth Amendment of the United States Constitution. Because habeas relief under 28 U.S.C. § 2255 is available only when prisoners "seek to invalidate the duration of their confinement - either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the [government's] custody," *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005), and a favorable judgment on Caward's apparent Eighth Amendment claim would not entitle him to either speedier release or a judicial determination that necessarily implies the unlawfulness of his incarceration, this Court lacks habeas jurisdiction over Ground Two of this § 2255 motion. *See Cardona v. Bledsoe*, 681 F.3d 533 (3d Cir. 2012) (District Court lacked habeas jurisdiction to entertain claim that

12

> prison officials referred him to the Special Management Unit as punishment for filing lawsuits against Bureau of Prisons); *McGee v. Martinez*, 627 F. 3d 933, 936 (3d Cir. 2010) ("The fact that a civil rights claim is filed by a prisoner rather than by an unincarcerated individual does not turn a . . . Bivens action into a habeas petition.") Accordingly, this Court will summarily dismiss Ground Two, without prejudice to Caward's raising the claim in a complaint under *Bivens* brought in the District Court with jurisdiction over the place of Caward's confinement at USP Hazelton, which at this time appears to be the Northern District of West Virginia.

ECF No. 3, Order to Answer at ¶ 4.)

Although Petitioner did not submit a reply addressing Grounds One, Three, and Four of his Motion, he has written to the Court on several occasions regarding Ground Two. (*See* ECF Nos. 6, 11.) Construed liberally, Caward's letters to the Court appear to challenge the Bureau of Prisons' decisions to place him in federal prisons without sufficient mental health facilities despite the Court's recommendation that he be placed in a federal prison where he could receive such treatment. (*See id.*) Although § 2255 only confers jurisdiction over "challenges [to] the validity of the petitioner's sentence [,]" § 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241 (3d Cir.2005) (quoting *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001)); *see also Cardona v. Bledsoe*, 681 F.3d 533, 535 (3d Cir. 2012). Although Caward's claim, as clarified in his letters, is not cognizable under § 2255, he may be able to challenge the execution of his sentence <u>in the district of his confinement</u> pursuant to 28 U.S.C. § 2241. At minimum, "to challenge the execution of his sentence under § 2241, [an inmate] would need to allege that [the Bureau of Prison's] conduct was somehow inconsistent with a command or recommendation in the sentencing judgment." *Cardona*, 681 F.3d at 537 (3d Cir. 2012); *see also McGee v. Martinez*, 627 F.3d 933, 936–37 (3d Cir. 2010) (habeas petition challenging BOP's decision to increase the rate of repayment in his IFRP beyond the rate

provided for by the sentencing court concerned the execution of his sentence, and was properly brought under § 2241). In *Woodall*, the sentencing court specifically included in its sentencing judgment a recommendation that the petitioner "spend the last six months of his sentence in a halfway house[,]" in accordance with 18 U.S.C. § 3624(c). *Woodall*, 432 F.3d at 238. The BOP nevertheless refused to place Woodall in a Community Corrections Center ("CCC") for more than ten weeks, citing its own internal regulations. Woodall filed a habeas petition under § 2241, challenging BOP's decision to limit his placement in a CCC to ten weeks. The Third Circuit held that Woodall's claim concerned the execution of his sentence, and was properly brought under § 2241. (*Id.*)

Here, the Court recommended at sentencing and in the Judgment of Conviction that Petitioner "be placed in a facility that can accommodate his mental health conditions." (Exhibit D, JOC at 2.) To the extent Caward is currently confined at a facility without adequate mental health services, he may be able to bring this claim <u>in the district of confinement</u> as a challenge to the execution of his sentence under 28 U.S.C. § 2241. Because it is not clear whether Petitioner is currently receiving mental health treatment, the Court will again dismiss this claim without prejudice to Caward's filing of a § 2241 petition and/or a <u>Bivens</u> action <u>in the district of confinement</u>.

### d. Certificate of Appealability

Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B). *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## V. CONCLUSION

For the reasons set forth in this Opinion, Petitioner's § 2255 Motion is denied, and the Court denies a certificate of appealability. An appropriate Order follows.

/s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

Date: September 27, 2017